*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-BG-0769

IN RE HARRY TUN

FILED **10/18/2018**
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 416262)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-099-14)
(DDN-463-10)

(Argued May 8, 2018                                   Decided October 18, 2018)

*Hendrik deBoer*, Senior Staff Attorney, with whom *Elizabeth A. Herman*, Deputy Disciplinary Counsel, *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, and *Jelani C. Lowery*, Assistant Disciplinary Counsel, were on the brief, for petitioner.

*Abraham C. Blitzer* for respondent.

Before GLICKMAN and THOMPSON, *Associate Judges*, and NEBEKER, *Senior Judge*.

Opinion for the court by *Associate Judge* THOMPSON.

Opinion by *Associate Judge* GLICKMAN, concurring in part and dissenting in part, at page 30.

THOMPSON, *Associate Judge*: In this original-discipline action, the Board on

Professional Responsibility (the "Board") recommends that respondent Harry Tun

be suspended for one year, with a requirement of proof of fitness before reinstatement, for violations of Rules 3.3 (a)(1) and 8.4 (c) of the Rules of Professional Conduct. We adopt the Board's recommendation of a one-year suspension, but decline to impose a fitness requirement.

## I.

The Office of Disciplinary Counsel (known until 2015 as the Office of Bar Counsel) initiated disciplinary proceedings against respondent after he filed, in a criminal matter before the Honorable Russell F. Canan, a motion for Judge Canan to recuse himself. The recusal motion, which respondent filed on October 16, 2009, stated in pertinent part as follows:

> [S]everal years ago, Judge Canan reported undersigned counsel for an alleged ethical violation, which was then investigated by D.C. Bar Counsel. The investigation was then dismissed without any disciplinary action being instituted against undersigned counsel.

Respondent acknowledges that these assertions were untrue in that (1) "Judge Canan had *not* reported [r]espondent for an ethical violation" and (2) the matter Judge Canan identified "had not been dismissed but was active in the disciplinary

system" (with the result that respondent "ultimately *did* receive[] discipline"). The background is as follows.

Between 1999 and 2003, respondent, a criminal defense attorney, accepted appointments pursuant to the District of Columbia Criminal Justice Act ("CJA") to advise and represent indigent criminal defendants in the Superior Court of the District of Columbia. Respondent submitted to the Superior Court payment vouchers in which he indicated the times he started and stopped working on matters for each individual client. Judge Canan became concerned that respondent was inaccurately reporting his time and notified the Chief Judge of the Superior Court, who referred the matter to the United States Attorney's Office ("USAO") for investigation. The USAO's review of respondent's vouchers revealed that respondent had sought payment for the same time period for two or more clients on 162 occasions. The USAO agreed not to file criminal charges against respondent if he "repaid the $16,034 in overpayments he had received as a result of false reporting" and "reported his conduct to the Office of Disciplinary Counsel."

Respondent reported his conduct to the Office of Disciplinary Counsel on July 26, 2006. On March 27, 2009, Disciplinary Counsel and respondent jointly filed with a Hearing Committee of the Board a petition for negotiated discipline, in

which respondent stipulated that he violated the Rules of Professional Conduct as charged in Disciplinary Counsel's Specification of Charges[1] and agreed to a nine-month suspension and a one-year period of probation. The Hearing Committee determined that the negotiated discipline was appropriate, and this court referred the petition to the Board for its views on August 12, 2009 (i.e., two months before respondent filed the recusal motion that underlies the instant matter). On November 24, 2009, the Board recommended that this court reject the initial petition for negotiated discipline "on the grounds that the proposed sanction was unduly lenient," a recommendation this court followed. Thereafter, Disciplinary Counsel and respondent submitted an amended petition. In August 2011, this court approved the parties' amended petition for negotiated discipline, under which we imposed on respondent the sanction of an eighteen-month suspension, with six months stayed subject to the terms of an agreed-upon probation. *See In re Tun*, 26 A.3d 313, 314 (D.C. 2011).[2]

---

[1] Specifically, respondent stipulated that his conduct violated Rule 1.5 (a) and (f) (in that he charged an unreasonable fee); Rule 3.3 (a)(1) (in that he made a knowingly false statement of material fact to the tribunal in submitting the vouchers); Rule 8.4 (c) (in that he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4 (d) (in that he engaged in conduct that seriously interfered with the administration of justice).

[2] We found that the CJA-voucher "errors were the result of respondent's 'abysmal' record-keeping" and noted that respondent "repaid to the Superior Court $16,034, which represented the 'time that Respondent had double billed minus a

(continued…)

It was while the petition for negotiated discipline was pending before the Board that respondent filed the recusal motion at issue here, falsely stating that the CJA-vouchers matter had been "dismissed without any disciplinary action being instituted against" him.

On the basis of the false statements in the motion to recuse, Disciplinary Counsel charged appellant anew with violating Rules 3.3 (a)(1),[3] 8.4 (c),[4] and 8.4

---

(…continued)

reasonable estimate [of the time] that he could have but failed to bill for other court-appointed matters.'" *In re Tun*, 26 A.3d at 314.

Respondent asserts that "[d]uring Disciplinary Counsel's investigation, [he] presented evidence that he had provided representation to indigent defendants in 42 CJA cases for which he had not sought compensation," for which he asserts he would have been "entitled to additional compensation estimated at between $16,800 and $37,000." The Board acknowledged respondent's contention that he "fail[ed] to charge for time worked on CJA matters in excess of the erroneously double-bill[ed] charges." Respondent testified that he is no longer on the CJA panel but "do[es] at least two pro bono [criminal] cases every year."

[3] Rule 3.3 (a)(1) provides generally that "[a] lawyer shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

[4] Rule 8.4 (c) provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

(d).[5]   An Ad Hoc Hearing Committee held an evidentiary hearing on the new

charges on May 5, 2015.  The hearing focused on the following passages from the

recusal motion:

Page 1 of the recusal motion, where respondent wrote:

> Judge Russell Canan has previously reported undersigned counsel for ethical violations and professional misconduct, which then led to an investigation by the [USAO] for criminal conduct by undersigned counsel. This investigation was ultimately . . . dismissed without any criminal charges being lodged against undersigned counsel.  The investigation of Judge Canan's referral included, but was not limited to, the execution of a search warrant upon undersigned counsel's office.  Undersigned counsel submits that he was then investigated by D.C. Bar Counsel as a result of Judge Canan's actions.  This occurrence created a great deal of animosity between undersigned counsel and Judge Canan, to the extent that Judge Canan has stated on numerous occasions that undersigned counsel was on "thin ice" for his conduct during some proceedings.

And pages 3-4 of the motion, where respondent wrote:

> With regard to the present matter, several years ago, Judge Canan reported undersigned counsel for an alleged ethical violation, which was then investigated by D.C.

---

[5]   Rule 8.4 (d) provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct that seriously interferes with the administration of justice."

Bar Counsel. The investigation was then dismissed without any disciplinary action being instituted against undersigned counsel. Since this time, Judge Canan has fostered a hostile relationship with undersigned counsel. He has an established prejudice against undersigned counsel and, consequently, has an established prejudice against the [d]efendant in this matter, which was not acquired from his participation in this case. Judge Canan's hostility and bias against undersigned counsel and his client has [sic] been readily apparent in trial in the above-captioned matter.

At the hearing, respondent acknowledged that he made statements in the recusal motion that were untrue. He testified that he knew at the time he wrote and filed the motion that he "w[as] being prosecuted by" Bar Counsel and had joined a petition for negotiated discipline in which he admitted to violations of the Rules.

Respondent further told the Hearing Committee that the recusal motion was "a very, very rushed job," which he filed "at 8:30 or 9 at night" after a "heated argument" with Judge Canan that day, and that he "didn't really proofread" the document (an omission he said was shown by the uncorrected "big gap" between the paragraphs on page 3 of the motion). Respondent asserted that his misrepresentation in the motion was due to a proofreading error, and that instead of "D.C. Bar Counsel" (in the sentence on pages 3-4 of the motion stating that "several years ago, Judge Canan reported undersigned counsel for an alleged

ethical violation, which was then investigated by D.C. Bar Counsel"), respondent should have written the "United States Attorney's Office."[6] Respondent characterized the misstatement as an "inartful[]" "recap" of the sentence on page 1 of the motion that stated that an "investigation [by the USAO] was ultimately . . . dismissed without any criminal charges being lodged against" him. He further explained that if he had proofread the motion, he "never would have filed it" as written and "would have said" instead that he was investigated by the USAO, which was "the one[] who dismissed it." Respondent maintained that the recusal motion contained "a typographical error" and that he did not intentionally or knowingly write statements that falsified or misled as to the facts.

In addition, referring to the fact that he had failed to file with the recusal motion the affidavit and certificate required by Super. Ct. Civ. R. 63-I (a) & (b) — an affidavit stating "the facts and the reasons for the belief that bias or prejudice exists" and a certificate of counsel stating that the motion was being "made in good faith" — respondent explained that he "didn't know that [he] had to file [an]

---

[6] Respondent testified that the beginning portion of the statement that "several years ago Judge Canan reported undersigned counsel for alleged ethical violations" was "correct."

affidavit" with the motion.[7]  He made that assertion notwithstanding the fact that the second page of the recusal motion cited and quoted Rule 63-I.  Respondent attributed this contradiction to his having "cut and paste[d]" language (which he took from "the computer") without actually "think[ing] it through."

The Hearing Committee submitted its report and recommendation to the Board on August 30, 2016.  A majority of the Hearing Committee rejected as false respondent's testimony that his misstatement in the recusal motion (i.e., that the disciplinary investigation had been dismissed) was "inadvertent."  The Hearing Committee majority found respondent's explanation "not credible and contrary to the weight of the evidence."  Addressing respondent's testimony about his "negligent" "failure to proofread" the recusal motion, the Hearing Committee majority found respondent's explanation about "inartful[]" "recap[ping]" both "inconsistent with the motion to recuse itself" and "nonsensical." (internal quotation marks omitted).  The Hearing Committee majority found that respondent's further explanation — that even though page 2 of the recusal motion quoted Rule 63-I in full, he did not know he had to file a supporting affidavit along with the motion — was "self-serving and not credible" given that the omitted

---

[7]  Because respondent failed to attach the required affidavit and certificate to the recusal motion, Judge Canan denied the motion on procedural grounds.

affidavit "would [have] be[en] particularly damning to [respondent] if found to be false." The Hearing Committee majority stated that, at a minimum, respondent's "actions [in including false statements in the recusal motion] amounted to a reckless disregard of the truth," but also found that in the recusal motion respondent "intentionally misrepresented the facts" in order to "bolster the legitimacy of his recusal argument." The Hearing Committee majority further found that respondent testified falsely to the Committee by claiming that the misstatements in his motion were inadvertent.

The Hearing Committee majority concluded that "the evidence clearly and convincingly support[ed] a finding" that respondent violated Rules 3.3 (a)(1) and 8.4 (c).[8] The Hearing Committee majority noted that this court has imposed sanctions ranging from public censure to a 60-day suspension for single instances of misrepresentations to courts. Finding, however, that respondent's prior discipline[9] and his false testimony to the Hearing Committee were aggravating

---

[8] Noting that Judge Canan had denied the recusal motion on procedural grounds, see *supra* note 7, the Hearing Committee majority "conclude[d] that [respondent's] improper conduct did not taint the judicial process in more than a *de minimis* way" and therefore found no violation of Rule 8.4 (d).

[9] The Hearing Committee majority cited respondent's "previous suspension for double billing" as well as "the spate of informal admonitions he ha[d] received." The Hearing Committee majority noted that in 1993, respondent was

(continued…)

factors (and that the latter was a "significant aggravating factor"), the Hearing

Committee majority recommended the sanction of a one-year suspension without a

proof-of-fitness requirement for reinstatement.[10]   In declining to recommend a

fitness requirement, the Hearing Committee majority found "no evidence that

supports a finding that there is clear and convincing evidence of a serious doubt as

---

(…continued)
found to have violated Rule 1.4 (a) for his "failure to keep his client informed about the status of a matter" and Rule 1.5 (b) for his "failure to provide his client with a writing setting forth the basis or rate of his fee" (Docket No. 308-93); that in 1995, he was found to have again violated Rule 1.15 (b) by failing "to notify and deliver promptly to a third person any funds to which that person was entitled" (Docket No. 330-94); that in 2004, he was found to have violated Rule 1.15 (a) and also Rule 1.16 (d) for failing "to retain a client's file and records reflecting how he handled settlement funds" (Docket No. 2003-D385); that in 2011, he was found to have violated Rule 1.6 by "revealing a client's confidences and secrets" (Docket No. 2010-D040); and that in 2013, he was found to have violated Rule 4.3 (a)(1) for "giving legal advice to an unrepresented person other than advice to secure counsel, when the interests of that person were in conflict with the interests of his client" (Docket No. 2009-D381).

[10]   The Hearing Committee Chair concurred in part and dissented in part. The Chair disagreed that respondent knowingly made a false statement in violation of Rule 3.3 (a)(1).  The Chair was persuaded that respondent "did not intend to mislead or deceive Judge Canan when he filed the recusal motion that contained a false statement" and credited respondent's testimony that he prepared the motion "after a very difficult day" through a rushed "'cut and paste job'" and that he did not pay attention to the content of the motion.  Because the Chair concluded that respondent did not intend to mislead Judge Canan, but instead "recklessly" made a misrepresentation, the Chair also found that respondent testified honestly before the Hearing Committee.  The Chair agreed that Disciplinary Counsel proved that respondent violated Rule 8.4 (c) in that the recusal motion "contained a misrepresentation that was made recklessly."  Taking into account respondent's prior discipline, the Chair favored the sanction of a three-month suspension.

to [r]espondent's ability to practice ethically" and no "clear and convincing evidence that [his "intentional misrepresentation to Judge Canan"] was anything other than a single, isolated incident."

The Board concurred with the Hearing Committee majority that respondent "violated Rules 3.3 (a)(1) and 8.4 (c) by making an intentional false statement in his recusal motion" and also that he "testified falsely in front of the Hearing Committee." However, the Board disagreed with Disciplinary Counsel, and with the Hearing Committee, on the appropriate sanction. The Board disagreed with Disciplinary Counsel's recommendation of a three-year suspension, reasoning that this sanction generally applies where there has been "a pattern of dishonesty and misrepresentation over a lengthy period," whereas in this case, respondent's "conduct neither involved the protracted and repeated dishonesty nor any other overt act to conceal the dishonesty." (internal quotation marks omitted). The Board nevertheless concluded that respondent's conduct "involved multiple instances of dishonesty — to the court (in the recusal motion) and the Hearing Committee (in his false testimony)" and a "disturbing pattern of dishonesty" and determined that a one-year suspension, as recommended by the Hearing Committee majority, was appropriate, but with a proof-of-fitness requirement. The Board stated "that there is a serious doubt as to [r]espondent's ability to practice

law [ethically] following his suspension." (internal quotation marks omitted). Finally, the Board reasoned that "[r]espondent's false testimony to the Hearing Committee shows that he does not understand the seriousness of his false statements to Judge Canan" and "does not appreciate his obligation to be honest." The Board also cited the absence of "evidence that [r]espondent has taken any steps to remedy his misrepresentation to Judge Canan."

Respondent takes exception to the Hearing Committee's findings that his false statements in the recusal motion and his failure to file the Rule 63-I affidavit and certificate were intentional and that the testimony he gave before the Hearing Committee was false. He argues that because the finding that he gave false testimony before the Hearing Committee "form[ed] the basis for the Board's recommendation that [he] be required to show fitness," this court should not impose a fitness requirement. He contends that the appropriate sanction is a thirty-day suspension. Disciplinary Counsel urges us to adopt the Board's recommendation.

**II.**

Disciplinary Counsel must establish a violation of a Rule of Professional Conduct by clear and convincing evidence. *See, e.g.*, *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001). This court "review[s] *de novo* the Board's legal conclusions and other legal questions, but we defer to the factual findings of the Hearing Committee and the Board [on subsidiary facts] 'unless they are unsupported by substantial evidence' in the record." *In re Speights*, 173 A.3d 96, 99 (D.C. 2017) (internal footnote omitted) (quoting D.C. Bar R. XI, § 9 (h)(1)). "[W]e are required to defer to Hearing Committee credibility findings if they are supported by substantial evidence on the record." *In re Pye*, 57 A.3d 960, 973 (D.C. 2012) (noting that "deference to the Hearing Committee's factual findings and credibility determinations is especially heightened where the determinations are based on direct observation of the [r]espondent" (internal quotation marks omitted)).

That said, in some circumstances, a Hearing Committee's finding as to a respondent's credibility "does not warrant the normal deference." *In re Anderson*, 778 A.2d at 341-42 (reaching that conclusion in a case where the credibility determination was based on rejection of the respondent's testimony as "self-serving" ("because testimony by a respondent in explanation of his conduct is almost by definition self-serving"); there was a "mistaken understanding" of the evidence; the Hearing Committee report "g[ave] no indication that it was based on

respondent's demeanor in testifying and responding to questions"; and the Hearing Committee's disbelief was based on an "analysis . . . in the nature of a legal conclusion"). "Whether [a] respondent gave sanctionable [i.e., intentional] false testimony before the Hearing Committee is a question of ultimate legal fact that the Board and this court review *de novo*." *In re Bradley*, 70 A.3d 1189, 1194-95 (D.C. 2013) (citing that principle in concluding, notwithstanding the general deference owed to "credibility determinations made by Hearing Committee members who are in a better position than either the Board or this court to assess the truthfulness of witness testimony" and "[d]espite the Hearing Committee's finding that respondent's demeanor 'seemed honest,'" that the Board "did not err in concluding that respondent was intentionally untruthful in her testimony before the Hearing Committee"; noting that there was "no factual support in the record for the Committee's conclusion that [the respondent] simply misremembered what had occurred," that her detailed testimony undermined that claim, that "her testimony was contradicted by [that of other witnesses]," and that no evidence in the record supported a finding that she was "merely confused"); *see also In re Romansky*, 938 A.2d 733, 739 (D.C. 2007) ("[N]o deference is owed [by this court] with respect to [the Board's determination of] ultimate facts that are really conclusions of law," such as whether an attorney's conduct was negligent or reckless or intentional, an issue as to which this court has "the obligation to make our own determination"; *id.*

("[W]e next consider *de novo* the Board's conclusion that the respondent did not act knowingly or recklessly, but merely negligently, in charging the premiums to [clients].").

**III.**

In this case, the subsidiary facts are undisputed; as the Hearing Committee Chair wrote, "[t]here is no question that [r]espondent drafted and filed a motion that contained a false statement." The issues before us are whether respondent made the false statement in his recusal motion intentionally or, as respondent contends, recklessly, and, concomitantly, whether respondent's testimony before the Hearing Committee as to his intent was false, in aggravation of the charged misconduct.

The explanation respondent gave the Hearing Committee for his false statement on pages 3-4 of the recusal motion (i.e., that "[t]he investigation [into his alleged ethical violation] was . . . dismissed without any disciplinary action being instituted") was that he was "recap[ping]" or "reiterating" what he had written on page 1 of the motion, but did so "inartfully." If respondent had written on pages 3-4 that the investigation was dismissed by Bar Counsel without any "charges" being

instituted, it might be believable that the misstatement on these pages was an inadvertently incorrect "recap" of what respondent wrote on page 1. Page 1 referred to both the USAO and Bar Counsel and referred to an investigation that was "dismissed without any . . . charges being lodged." However, the reference on pages 3-4 to dismissal without "disciplinary action" is new, i.e., not a repeat of what was said on page 1, and thus, rather than reflecting a careless effort at recapping, sets out what appears to be a deliberately new narrative. What also seems clear is that what respondent meant to convey by what he wrote on pages 3-4 was that Judge Canan's suspicions about respondent's billing irregularities lacked foundation, when respondent knew that was not true. We therefore agree with the Hearing Committee and the Board that the evidence is clear and convincing that the false statement on pages 3-4 of the recusal motion was intentional (made in an apparent effort to bolster the recusal argument). Accordingly, we agree that respondent violated Rules 3.3 (a)(1) and 8.4 (c). We also agree that respondent's testimony to the contrary before the Hearing Committee was false.

**IV.**

We turn now to what sanction is appropriate. "'The discipline we impose should serve not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct.'" *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (quoting *In re Scanio*, 919 A.2d 1137, 1144 (D.C. 2007)). While it is "the court which decides the sanction to be imposed," *id.*, unless the Board's sanction recommendation would "foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted," D.C. Bar R. XI, § 9 (h)(1), it "comes to us with a strong presumption in favor of its imposition." *In re Martin*, 67 A.3d at 1053 (internal quotation marks omitted). "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Howes*, 52 A.3d 1, 13 (D.C. 2012) (internal quotation marks omitted).

This case involves respondent's dishonesty to the court in the recusal motion and what we agree was respondent's intentionally false testimony before the Hearing Committee regarding whether the false statements in the recusal motion were intentional (which is an aggravating factor). Thus, in that sense, this case "involve[s] multiple instances of dishonesty," as the Board found. The Hearing Committee majority treated respondent's false testimony before the Committee as

a "significant" aggravating factor. We note, however, that this court has treated false testimony before the Hearing Committee as a significant aggravating factor where a respondent lied by "denying the misconduct," *see In re Chapman*, No. 07-BG-800*, 2009 D.C. App. LEXIS 16, *6 (D.C. Feb. 5, 2009), thereby demonstrating "[a] failure to appreciate the impropriety of [the charged] conduct," *id.* at *7 (citing *In re Goffe*, 641 A.2d 458, 466 (D.C. 1994)). Here, by contrast, respondent acknowledges that he made statements in the recusal motion that were untrue, recognizes that he should not have filed in court a motion containing false statements, acknowledges that his conduct was reckless, and agrees that a sanction is warranted; and the Hearing Committee found that he "cooperated with Disciplinary Counsel's investigation," which is "a mitigating factor." *Id.* at *6. The net result is that while we treat as an aggravating factor respondent's false testimony regarding whether the untrue statements in the recusal motion were intentional, we give that aggravating factor somewhat less weight than the Board gave it.

Further, the Hearing Committee majority and the Board found that respondent gave intentionally false testimony about why he did not attach an affidavit and certificate to the recusal motion. Asserting that the Hearing Committee "evaluated [respondent's] demeanor while testifying," Disciplinary

Counsel suggests that "traditional deference" to the Hearing Committee's majority's credibility determination is warranted. We reject that suggestion because nothing in the Hearing Committee report refers to respondent's demeanor while testifying as a basis for the majority's finding that respondent gave false testimony before the Committee. We do not imply that a Hearing Committee is required to express whether it relied on a respondent's demeanor, but in this case what the Hearing Committee *did* express was that it rejected respondent's testimony as "self-serving" and (apparently for that reason) "not credible." We have observed that "testimony by a respondent in explanation of his conduct is almost by definition self-serving," *In re Anderson*, 778 A.2d at 341, so the self-serving nature of respondent's testimony was not a substantial basis for rejecting it. Moreover, the Hearing Committee's other articulated reason for finding respondent's testimony about the affidavit not credible — the Committee's suggestion that respondent's purpose in failing to attach an affidavit to the recusal motion might have been to avoid the "particularly damning" effect to him if the affidavit were found to be false — is speculative and in our view is less persuasive than respondent's point that "[t]o believe that [he] intentionally failed to include the affidavit and certificate is to believe that [he] intentionally sabotaged his own motion."

In addition, respondent's explanation that the recusal motion was a "copy and paste" job from "the computer" into an electronic document, and that he included in the motion a block quote of the language of Rule 63-I without actually "think[ing] it through" is not "improbable"[11] in this age of computer-based legal research and word processing. Respondent's testimony was not so precise[12] that it suggests a carefully fabricated explanation rather than the truth, and it was at least weakly corroborated by his uncontradicted testimony that a recusal motion was one he had "never filed before." *Cf. In re Bradley*, 70 A.3d at 1194-95 (agreeing with Board rejection of Hearing Committee finding that the respondent/guardian "seemed honest" and did not intentionally testify untruthfully about visits to her ward, because the testimony was contradicted by the testimony of social workers at the ward's nursing home, and because it contained a level of detail that undercut the respondent's claim that she had merely misremembered when she claimed to have visited the ward). In addition, the recusal motion described a history between respondent and Judge Canan which the judge knew first-hand, a fact that could have made an affidavit about the grounds for recusal seem like surplusage. Accordingly, we cannot agree that there was "demonstrable fabrication or perjury,"

---

[11] *In re Martin*, 67 A.3d at 1051 (internal quotation marks omitted).

[12] For example, respondent agreed with the questioner that he did not know he had to file a "certificate of good standing" along with the recusal motion (whereas Rule 63-I requires a certificate of *good faith*).

*In re Cleaver-Bascombe*, 892 A.2d 396, 411 (D.C. 2006), in respondent's testimony about why he did not include the required Rule 63-I affidavit and certification with his recusal motion.

This court has imposed sanctions ranging from public censure to a 60-day suspension for misrepresentations to courts or other tribunals. Here, respondent's multiple instances of prior discipline, including most prominently his suspension for double billing through CJA vouchers, are aggravating factors that make a suspension sanction appropriate. While a longer period of suspension would also have been justified, we are satisfied that the one-year suspension recommended by the Hearing Committee and the Board falls "within [the] wide range of acceptable outcomes." *In re Howes*, 52 A.3d at 13 (internal quotation marks omitted). *See, e.g.*, *In re Rodriguez-Quesada*, 122 A.3d 913, 921 (D.C. 2015) (two-year suspension where attorney "intentionally made a false statement to an immigration judge and then gave false testimony to the Hearing Committee about having done so," but also showed "a pattern of lack of competence, lack of diligence, neglect of his clients' cases, failure to communicate with his clients, and refusal to return case files and unearned payments"); *In re Guberman*, 978 A.2d 200, 204, 210 (D.C. 2009) (eighteen-month suspension for lying to a law firm supervisor about having filed an appeal and creating false court filing stamps on papers, thereby "falsely

certifying that the papers had been filed in court" (internal quotation marks omitted)); *In re Kerr*, 611 A.2d 551, 552 (D.C. 1992) (one-year suspension for knowingly filing a false federal income tax return); *In re Hutchinson*, 534 A.2d 919, 919-20 (D.C. 1987) (one-year suspension for untruthful testimony before the Securities and Exchange Commission). We therefore adopt the Board's recommendation of a one-year suspension.

Finally, we consider the Board's recommendation that respondent be required to show fitness to practice prior to reinstatement. As we have explained, a "fitness requirement depends on a specific finding beyond the finding of a violation of the Rules." *In re Cater*, 887 A.2d 1, 25 (D.C. 2005). "[P]roof of a violation of the Rules that merits even a substantial period of suspension is not necessarily sufficient to justify a fitness requirement[.]" *Id.* at 22. The reason for imposing a proof of fitness requirement is "conceptually different from the reason for suspending a respondent for a period of time," *id.*; in contrast to a suspension, which is "intended to serve as the commensurate response to the attorney's past ethical misconduct," "the open-ended fitness requirement is intended to be an appropriate response to serious concerns about whether the attorney will act ethically and competently in the future, after the period of suspension has run," *id.* "'[T]o justify requiring a suspended attorney to prove fitness as a condition of

reinstatement, the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law.'" *In re Ditton*, 980 A.2d 1170, 1174 (D.C. 2009) (quoting *In re Cater*, 887 A.2d at 6). "The term 'doubt' . . . connote[s] real skepticism, not 'just a lack of certainty.'" *In re Cater*, 887 A.2d at 24. This court's primary "concern is that the attorney's resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest." *Id.* at 22 (internal quotation marks and brackets omitted). "[T]he decision to impose a fitness requirement turns on a partly subjective, predictive evaluation of the attorney's character and ability." *Id.*

Our caution about imposing a fitness requirement reflects a recognition that "while a fitness requirement is not quite as severe an enhancement as disbarment, it comes close," as it "can transform a [relatively short period of] suspension into one that lasts for years." *Id.* at 25. "The fitness requirement can be a tail that wags the disciplinary dog," as it "may have the practical effect of greatly prolonging – even tripling or quadrupling – a respondent's period of suspension." *Id.* at 23 (internal quotation marks omitted). "[T]ak[ing] into account th[ose] consequences for respondent attorneys," we "require[] Bar Counsel to prove the facts that justify the enhancement with evidence that is clear and convincing." *Id*. at 23, 25. We

have said that "if no serious doubt exists about an attorney's fitness, it would be unnecessary and unfair to augment the sanction of a limited period of suspension with [the] onerous obligation" to prove fitness prior to reinstatement. *Id.* at 24. In the end, "evidence of circumstances surrounding and contributing to the misconduct may be what tips the balance in favor of [or against] the [proof-of-fitness] condition." *Id.* at 22.

The Board found that Disciplinary Counsel "proved by clear and convincing evidence" respondent's "disturbing pattern of dishonesty" and thus proved "that there is a serious doubt as to [r]espondent's ability to practice law [ethically] following his suspension." (internal quotation marks omitted). The Board reasoned that "[r]espondent's false testimony to the Hearing Committee shows that he does not understand the seriousness of his false statements to Judge Canan" and "does not appreciate his obligation to be honest."

As discussed above, while we agree that respondent gave false testimony to the Hearing Committee when he insisted that his false statement in the recusal motion was not intentional, we do not agree that he gave false testimony about non-inclusion of an affidavit and certification. Thus, in our view, the pattern of dishonesty is not as discernible as the Board found it to be. Nor, in light of

respondent's acknowledgment that a sanction is warranted for his conduct in connection with the recusal motion, do we agree that the record shows that respondent does not understand the seriousness of his false statements to Judge Canan. Also, as the Board recognized, respondent's "false statements arise from a prior history between Judge Canan and [r]espondent," a history that led respondent to state in his recusal motion that the judge "ha[d] fostered a hostile relationship with" respondent. Respondent explained in his testimony before the Hearing Committee that he filed the recusal motion (and ended up withdrawing from the case after the motion was denied) because he did not want his client to "suffer" by having Judge Canan's "bias against [respondent] . . . spill[] over to [his] client." He told the Hearing Committee that he was "trying to protect" his client, a twenty-four-year-old man, from "go[ing] to jail for a long time" and thought he had "a fair shot at winning the case" if he could "get a fair shake." Respondent testified that the case was "emotional" because he "care[d] for" his client, and because he (respondent) "g[o]t scared" after Judge Canan told him, after a "heated argument" in the courtroom, that he was "on thin ice" and risking contempt. The Hearing Committee did not discredit any of the foregoing testimony.

Respondent's explanations — his perception of Judge Canan's hostility toward him, his emotional state, and his objective to "protect" his client by getting

Judge Canan to recuse — in no way justify or excuse his false statements to the court or his false testimony to the Hearing Committee. We reiterate that "lying under oath on the part of an attorney for the purpose of attempting to cover up previous dishonest conduct is absolutely intolerable." *In re Cleaver-Bascombe*, 892 A.2d at 412. But respondent's uncontroverted testimony about the heightened emotional circumstances surrounding his drafting of the recusal motion does inform our view about whether respondent would be likely to repeat his dishonest conduct if he is permitted to resume practice at the end of the suspension period. We have said that "where the misconduct involved a response to the 'pressure of the moment' or a situation unlikely to be repeated, we are less likely to impose a condition on the respondent's resumption of practice." *In re Guberman*, 978 A.2d at 212-13 (internal footnotes omitted) (declining to impose a fitness requirement where the respondent's conduct began with "a 'foolish and imprudent' response to a particular pressure, and developed into misconduct that snowballed as respondent made effort after effort to conceal his initial lie to his supervisor about having filed an appeal on behalf of the client").[13] Here, as the Hearing Committee found, respondent's instances of misconduct grew out of "a single, isolated incident."

---

[13] *See also, e.g.*, *In re McBride*, 642 A.2d 1270, 1272-73, 75 (D.C. 1994) (declining to impose a fitness requirement where the respondent, who was convicted of aiding and abetting for signing a false statement to help a pro bono client obtain a U.S. passport, "'let his heart carry his head'"); *Goffe*, 641 A.2d at

(continued…)

The facts that none of respondent's informal admonitions were for dishonest conduct and that his discipline in the CJA-vouchers matter was for conduct resulting from "abysmal" record-keeping rather than intentional dishonesty, likewise inform our view.[14]

On this record, although we obviously lack certainty regarding whether respondent will practice ethically if permitted to resume practice at the end of his one-year suspension, we cannot say that we have real skepticism about whether he will do so. "[T]he requisite 'serious doubt' must be generated by evidence that is 'clear and convincing'"; there must be "[a] firm belief in a serious doubt." *Cater*, 887 A.2d at 24  We do not see clear and convincing evidence of a pattern of dishonesty; at best (or worst), the evidence on this score is in equipoise, meaning

---

(…continued)

465 (disbarring respondent — and thus requiring a demonstration of fitness before he might resume practice after five years — because he "did not engage in bad acts out of sympathy for another or because of the pressure of the moment"; rather, "his conduct was part of a plan to commit fraud intended to benefit himself").

[14]  The Hearing Committee acknowledged that respondent's prior discipline in connection with the CJA vouchers matter was "the result of recklessly sloppy timekeeping practices."

that we must give the respondent the benefit of the doubt.[15] Like the Hearing Committee majority, we find "no evidence that supports a finding that there is clear and convincing evidence of a serious doubt as to [r]espondent's ability to practice ethically" and no "clear and convincing evidence that [his 'intentional misrepresentation to Judge Canan'] was anything other than a single, isolated incident."

Moreover, consistency with our precedents does not compel us to impose a fitness requirement on the basis of respondent's intentional misrepresentation to the court and his denial before the Hearing Committee that his false statement to the court was intentional. *See, e.g.*, *In re Chapman*, No. 07-BG-800, 2009 D.C. App. LEXIS 16, *2, 11-13 (D.C. Feb. 5, 2009) (imposing a sixty-day suspension, with thirty days stayed in favor of a one-year period of probation during which respondent was required to complete certain CLE courses, but no fitness requirement, where respondent Chapman neglected his client's case, resulting in her case being dismissed, had a minor disciplinary history, showed a lack of remorse for the harm caused to the client, and "was found to be deliberately dishonest in his dealings with Bar Counsel and not credible in his testimony before

---

[15]    *Cf. In re Romansky*, 938 A.2d at 742 ("Because we view the facts as virtually in equipoise, we cannot conclude that [there] has been [proof] by the requisite 'clear and convincing' evidence.")

the [Hearing] Committee").[16] We conclude that a fitness requirement is not warranted.

For the foregoing reasons, we adopt the Board's recommendation that respondent be suspended for one year. *See* D.C. Bar R. XI, § 14 (f). We decline to condition his reinstatement upon proof of fitness. It is

*So ordered.*

GLICKMAN, *Associate Judge*, concurring in part and dissenting in part: I concur in the court's adoption of the recommended sanction of a one-year suspension. I respectfully dissent from the decision not to require respondent to demonstrate his fitness to practice law ethically and competently as a condition of his reinstatement.

Respondent comes before us with the following history of having violated the Rules of Professional Conduct: In 1993, he was disciplined for violating Rule

---

[16] *See also id.* at 7 ("[A]n attorney deliberately attempting to cover up misconduct is absolutely intolerable, regardless of whether it is under oath or during an investigation [by Disciplinary Counsel]."

1.4 (a) by failing to keep his client informed about the status of a matter, and Rule 1.5 (b) by failing to give his client a written statement of the basis or rate of his fee. In 1995, respondent was disciplined for violating Rule 1.15 (b) by withholding funds that a third person was entitled to receive. In 2004, respondent was disciplined for violating Rules 1.15 (a) and 1.16 (d) by failing to retain a client's file and records showing how he had handled settlement funds. In 2011, he was disciplined for violating Rule 1.6 by revealing a client's confidences and secrets. In 2013, respondent was disciplined for violating Rule 4.3 (a)(1) by giving legal advice to an unrepresented person whose interests conflicted with the interests of his client.

In addition to that history, there are the Rule violations that preceded and that underlie the present matter. In 2011, this court imposed an eighteen-month suspension, with six months stayed, and a term of probation, for the several Rule violations respondent committed by submitting to the Superior Court a multitude of false and overstated payment vouchers. Respondent stipulated that he made knowingly false statements of material fact to the Court in the vouchers, in violation of Rule 3.3 (a)(1); that his conduct involved dishonesty, fraud, deceit or

misrepresentation, in violation of Rule 8.4 (c); and that his conduct seriously interfered with the administration of justice, in violation of Rule 8.4 (d).[1]

In the present case, the court upholds findings that respondent intentionally made false statements in a motion seeking a judge's recusal in violation of Rule 3.3 (a)(1) and that, in so doing, he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. The court also upholds the finding that respondent testified falsely to the Hearing Committee in denying that his misstatements were intentional.[2]

All this adds up to a lengthy series of ethical violations spanning two decades, one in which the misconduct grew more serious as time went on. Warnings and chastisements failed to impress respondent with the need to conform

---

[1] The serious dishonesty of respondent's 162 identified instances of double billing is not minimized, in my view, by characterizing them as "the result of respondent's 'abysmal' record-keeping." *In re Tun*, 26 A.3d 313, 314 (D.C. 2011).

[2] My colleagues do not agree with the determinations by the Hearing Committee and the Board that respondent also testified falsely when he explained his failure to attach an affidavit and certificate of good faith to his recusal motion. I am inclined to defer to the Hearing Committee's assessment of respondent's truthfulness rather than reevaluate it on the paper record before us; it is the exceptional case in which this court can reject a fact finder's evaluation of a witness's credibility. I do not consider the issue to be material to our sanction determination, however.

to ethical standards of practice. Based on this history of ethical breaches, the gravity of the more recent ones, the disturbing pattern of disregard for ethical norms and dishonesty they evince, and the absence of significant countervailing evidence in respondent's favor, I have a serious doubt – "real skepticism" – about respondent's ability to practice law ethically following his suspension.

Moreover, that is the Board's judgment as well. It applied the correct legal standard in concluding that Disciplinary Counsel had proved by clear and convincing evidence that respondent's continuing fitness to practice law is a matter in serious doubt. This judgment call is, of necessity, "a partly subjective, predictive evaluation of the attorney's character and ability," *In re Cater*, 887 A.2d 1, 22 (D.C. 2005)); it has record support cited by the Board; and it "comes to us with a strong presumption in [its] favor." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013). The Board's judgment may be debatable, but I do not think that presumption has been overcome.